UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION

YANKEE TRAILER COURT, LLC, BILL
FRISBIE, DAVID SHEETZ, BRIAN
FRISBIE,

          Plaintiffs,

-vs-                                      Case No.  6:03-cv-1877-Orl-28KRS

CITY OF DAYTONA BEACH, FLORIDA,
JANE CARTON, MARK ELLISON,
BARBARA BREWER, SUZETTE
CAMERON, DAN WILKES, JOHN
STAINAKER,

          Defendants.

## ORDER

Plaintiffs Yankee Trailer Court, LLC, Bill Frisbie, and Brian Frisbie[1] brought the instant action against Defendant City of Daytona Beach ("the City") alleging that the City and its employees violated their constitutional rights in violation of 42 U.S.C. §§ 1983 and 1985(3). This cause is before the Court on the City's Motion for Summary Judgment (Doc. 29). For the reasons set forth below, the City's motion must be granted.

### I. Undisputed Facts

At all times material to this case, Plaintiffs were the owners of three mobile home parks in Daytona Beach, Florida (collectively "the Yankee Trailer properties"). On January 6, 2003, several City code enforcement inspectors and uniformed City police officers

---

[1] David Sheetz has been dismissed as a plaintiff in this case (Doc. 27).

conducted inspections of the Yankee Trailer properties. Upon determining that the properties were in violation of the City code, the City assessed fines against Plaintiffs. These fines, or the Plaintiffs' failure to pay them, ultimately led to the imposition of liens on the Yankee Trailer properties. Although the Plaintiffs had a right to appeal the actions taken against them, they neglected to do so.

## II. Plaintiffs' Specific Allegations of Abuse by City Inspectors

Plaintiffs argue, in essence, that the City's January 6, 2003 inspections amounted to a "raid" of their properties. Doc. 40, at 3. Plaintiffs' core contentions in this regard are that City inspectors announced to Plaintiffs' employees and tenants that they were "God,"[2] then proceeded to order Plaintiffs' tenants, under the threat of arrest, to open their trailers for inspection and remove their recreational vehicles from the properties. Doc. 2, at 2. According to Plaintiffs, the City took these actions in a calculated effort to deprive them of their property.

## III. Summary Judgment Standards

Summary judgment "shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). The moving party bears the

---

[2] The City inspectors' assertion of divinity was limited to the day of inspection. Doc. 40, at 10 (alleging that the inspectors announced "to the Plaintiffs' employees and tenants that they were 'God' today").

burden of establishing that no genuine issues of material fact remain. <u>Celotex Corp. v. Catrett</u>, 477 U.S. 317 (1986).

In ruling on a motion for summary judgment, the Court construes the facts and all reasonable inferences therefrom in the light most favorable to the nonmoving party. <u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S. 242 (1986). However, summary judgment is mandated "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." <u>Celotex</u>, 477 U.S. at 322. "[A]t the summary judgment stage, the judge's function is not himself to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." <u>Anderson</u>, 477 U.S. at 249.

When faced with a "properly supported motion for summary judgment, [the nonmoving party] must come forward with specific factual evidence, presenting more than mere allegations." <u>Gargiulo v. G.M. Sales, Inc.</u>, 131 F.3d 995, 999 (11th Cir. 1997). "The evidence presented cannot consist of conclusory allegations or legal conclusions." <u>Avirgan v. Hull</u>, 932 F.2d 1572, 1577 (11th Cir. 1991); <u>see also</u> Fed. R. Civ. P. 56(e) (providing that the nonmovant's response "must set forth specific facts showing that there is a genuine issue for trial").

### IV. Analysis

Plaintiffs originally complained that the City's actions violated their rights under the takings clause of the Fifth Amendment and their substantive and procedural due process rights under the Fourteenth Amendment. Doc. 1 ¶¶ 26, 34. At this stage of the proceedings, however, the sole basis for Plaintiffs' claims is that the City "conspired to and

carried out code enforcement activities with an illegal, ulterior motive *in violation of their substantive due process rights*." Doc. 51, at 2 (stating the nature of the action) (emphasis added); see also Doc. 40, at 2 ("Plaintiffs have not brought an inverse condemnation action nor do they complain that they have been denied procedural due process."); id. at 9-10 (characterizing claims exclusively in substantive due process terms).

### A. Types of Substantive Due Process Claims

Substantive due process claims are of two general types. The first type addresses the violations of rights which are "implicit in the concept of ordered liberty." Lewis v. Brown, 409 F.3d 1271, 1272 (11th Cir. 2005) (citations and internal quotations omitted). The second type addresses the deprivation of non-fundamental rights through "pretextual, arbitrary, and capricious" means. Beckwith v. City of Daytona Beach Shores, 58 F.3d 1554, 1563 (11th Cir. 1995).

Plaintiffs do not assert that the City deprived them of any fundamental right. Rather, they claim only that they have been deprived of property interests which–as the Eleventh Circuit and Supreme Court have long held–are "created [not] by the Constitution . . . but . . . by existing rules or understandings that stem from an independent source such as state law." Greebriar Vill., L.L.C. v. Mountain Brook City, 345 F.3d 1258, 1262 (11th Cir. 2003) (quoting Bd. of Regents v. Roth, 408 U.S. 564, 577 (1972)). Plaintiffs' claim thus falls squarely into the second category of substantive due process claims.

### B. Non-Viability of Plaintiffs' Claim Under Eleventh Circuit Caselaw

In two recent cases, the Eleventh Circuit explained that its decision in McKinney v. Pate, 20 F.3d 1550 (11th Cir. 1994), foreclosed substantive due process claims based on

"non-legislative deprivations of state-created rights, [including] land-use rights," irrespective of whether the deprivations occurred as a consequence of the government's arbitrary and irrational actions. Lewis, 409 F.3d at 1273 (quoting Greenbriar, 345 F.3d at 1263). Thus, insofar as non-legislative deprivations of non-fundamental rights are concerned, "[c]onstitutional due process is satisfied" so long as "proper procedures are employed." Greenbriar, 345 F.3d at 1263.

Under this standard, Plaintiffs' substantive due process claim clearly cannot proceed any further. Not only is Plaintiffs' claim based on the deprivation of a non-fundamental property right, the alleged deprivation of which they complain was plainly the result of executive–and not legislative–action. There is no indication, moreover, in Plaintiffs' pleadings or anywhere in the record, that the process afforded to Plaintiffs by the City was in any way deficient. Indeed, as Plaintiffs themselves have asserted, "they [do not] complain that they have been denied procedural due process." Doc. 40, at 2. Under these circumstances, there can be no claim–at least not in this Circuit–that due process concerns are implicated.[3]

---

[3] Even if McKinney did not foreclose Plaintiffs' claims against the City, their claims would nevertheless have failed. The test to determine whether government conduct is sufficiently irrational to constitute a substantive due process violation is whether the conduct "shocks the conscience." United States v. Salerno, 481 U.S. 739, 746 (1987) (internal quotations and citations omitted). This includes only acts so "harsh and oppressive" in character that they violate the very "decencies of civilized conduct." See Peter J. Rubin, *Square Pegs and Round Holes: Substantive Due Process, Procedural Due Process, and the Bill of Rights*, 103 Colum. L. Rev. 833, 845-46 (2003) (quoting Pension Benefit Guar. Corp. v. R.A. Gray & Co., 467 U.S. 717, 733 (1984), and Rochin v. California, 342 U.S. 165, 169 (1952), in the context of discussing the Supreme Court's numerous articulations of the shocks-the-conscience test); see also County of Sacramento v. Lewis, 523 U.S. 833, 846 (1998) ("[O]nly the most egregious official conduct can be said to be 'arbitrary in the

## V. Conclusion

For all of the foregoing reasons, the City's motion for summary judgment (Doc. 29) is **GRANTED**.

**DONE** and **ORDERED** in Chambers, Orlando, Florida this ___15___ day of July, 2005.

JOHN ANTOON II
United States District Judge

Copies furnished to:
Counsel of Record
Unrepresented Party

---

constitutional sense.'") (quoting Collins v. Harker Heights, 503 U.S. 115, 129 (1992)). The Court cannot say that the City's conduct, as alleged by Plaintiffs, was so exceptionally egregious.

-6-